Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in The U.S. DISTRICT COURT at Seattle, Washington.

............November 24........ 20 09
BRUCE RIFKIN, Clerk
By_____ Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>MARK ASHMORE,<br>HIEP NGUYEN,<br>LUKE REIMER, and<br>CHRISTOPHER DICUGNO,<br><br>  Defendants. | NO. CR 09-402 RAJ<br><br>INDICTMENT<br><br>09-CR-00402-INDI |

The Grand Jury charges that:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

**A.  Introduction**

At all times relevant to this Indictment:

1. "Equity Solutions Northwest," (hereinafter, "ESNW") was a Washington company owned and operated by MARK ASHMORE.

2. "Remarkable Properties, LLC," (hereinafter, "Remarkable Properties") was a Washington limited liability company owned and operated by MARK ASHMORE.

3. Pierce Commercial Bank was a financial institution as defined in Title 18, United States Code, Section 20, located in the Western District of Washington, and was federally insured at all times relevant herein.

INDICTMENT - 1
(U.S. v. Ashmore, et al.)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

4. CHRISTOPHER DICUGNO worked as a loan officer at Pierce Commercial Bank.

5. LUKE REIMER worked as a loan officer at Premier Mortgage.

6. Higa Escrow was an escrow company owned and operated by C.H.

**A. The Offense**

7. Beginning on an exact date unknown, but sometime within the last five years, and continuing through on or about January 12, 2008, in the Western District of Washington at Bellevue, and elsewhere, MARK ASHMORE, HIEP NGUYEN, LUKE REIMER, and CHRISTOPHER DICUGNO, (collectively, "Defendants") together with others known and unknown, did knowingly and willfully conspire, confederate and agree to commit offenses against the United States, to wit: To knowingly transmit and cause to transmit by wire, communications in interstate and foreign commerce in furtherance of a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and to aid and abet, cause and procure the same, knowing full well that the pretenses, representations and promises were false when made, in violation of Title 18, United States Code, Sections 1343 and 2.

**B. The Object of the Conspiracy.**

8. The object of the conspiracy was for Defendants to unlawfully enrich themselves and their co-conspirators by obtaining mortgage loans under false pretenses. Defendants would recruit or cause others to recruit "straw buyers" to purchase residential real property for an inflated price. Defendants would then cause the straw buyer to apply for loans to finance the inflated purchase price, using materially false information to obtain the loans. The fraudulently obtained loan would then be used to pay the original seller, with the excess amounts going to Defendants and other conspirators.

**C. The Manner and Means of the Conspiracy.**

9. The manner and means by which the Defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

INDICTMENT - 2
(U.S. v. Ashmore, et al.)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

10. **Identification of Subject Properties.** It was part of the conspiracy that the conspirators, and others acting on their behalf, would identify residential real property for sale (hereafter, collectively referred to as the "subject properties"). MARK ASHMORE would then contact the seller of the subject properties, and would generally offer to purchase the property at well above the asking price. As part of the propose sale agreement, ASHMORE would have the seller of the subject properties sign an "upgrade agreement," assigning any proceeds over the original asking price to a company owned or controlled by ASHMORE. ASHMORE would claim that the assigned proceeds were needed to update, remodel, expand, or renovate the property.

11. **Recruitment of Straw Buyers.** It was part of the conspiracy that conspirators, including but not limited to MARK ASHMORE, HIEP NGUYEN, LUKE REIMER, would recruit and pay individuals to pose as buyers (hereafter, "straw buyers") for the subject properties. The Defendants would often promise to pay the straw buyers as much as $10,000. In return for their fee, the straw buyers would allow their identities and credit information to be used in mortgage loan applications. The applications were submitted to financial institutions and mortgage lenders, and represented the straw buyer as the true buyer of the selected properties, and the individual responsible for the loan. However, the straw buyers at no time believed themselves to be the true owner of the properties. It was instead understood that the properties would be controlled by MARK ASHMORE and other members of the conspiracy, and that all mortgage payments were to be made by other members of the conspiracy. The conspirators recruited more than fifteen individuals to act as straw buyers, some of whom agreed to do so for more than one subject property.

12. **The Subject Properties are Sold to Straw Buyers.** It was part of the conspiracy that the subject properties would then be sold, or "flipped" to the straw buyer at the inflated price arranged by ASHMORE and others.

13. **Fraudulent Loan Applications.** It was part of the conspiracy that conspirators, including but not limited to ASHMORE, LUKE REIMER, and HIEP

INDICTMENT - 3
(U.S. v. Ashmore, et al.)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

NGUYEN, and others, would prepare and/or cause to be prepared on behalf of the straw buyers, materially false and fraudulent mortgage loan applications, including (among other things), falsely inflated income levels; false employment information; false employment verifications; and false certifications that the straw buyers intended to occupy the home as their primary residence. Said misrepresentations were typically contained on a "Uniform Residential Loan Application," also known as a Fannie Mae Form 1003. The mortgage loan applications were submitted to financial institutions and mortgage lenders with the intent of securing loans to finance the fictitious "flipped" sale price. Defendants acted with the intent to defraud the respective mortgage companies to whom the loan applications were sent, knowing that the lenders would rely on the misrepresentations.

      14. **Fraudulent Verification of Owner/Occupancy.** It was part of the conspiracy that, in each case, the false mortgage loan application would also include a separate materially false verification, typically under penalty of perjury, that the purpose of the loan was for the straw buyer to acquire the selected property as a primary residence. The conspirators caused the straw buyer to make this misrepresentation to secure 100% financing of the "flip" transactions (thereby avoiding making a down payment) and to obtain a lower interest rate.

      15. **Diversion and Disbursement of Fraudulently Obtained Loan Proceeds.** It was part of the conspiracy that once the mortgage applications were approved, the fraudulently obtained loan proceeds from the lending institutions would be wired in interstate commerce to Higa Escrow Services' account at Banner Bank. Higa Escrow Services would then typically, pay any underlying loans and lien holders, and then distribute the excess amounts to members of the conspiracy.

      16. Members of the conspiracy would often make the payments on the mortgage loans obtained as part of the conspiracy, in an attempt to maintain the loans until the properties could be sold again, oftentimes in another flip to another straw buyer at a higher inflated price. However, in the end, the conspirators would ultimately fail to

INDICTMENT - 4
(*U.S. v. Ashmore, et al.*)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

make payments on the loans, and properties would go into foreclosure, causing the financial institutions and mortgage lenders to suffer substantial losses.

17. The Grand Jury further alleges that the conspiracy affected one or more federally insured financial institutions, as defined in Title 18, United States Code, Section 20, including but not limited to Pierce Commercial Bank.

**D.   Overt Acts of the Conspiracy.**

18. In furtherance of the conspiracy, and to accomplish one or more of its objects, the following overt acts were committed by one or more of the conspirators within the Western District of Washington:

　　　a.   On or about April 23, 2007, Defendants caused Pierce Commercial Bank to wire $632,284.50, via Banner Bank, to Higa Escrow Service's account with Banner Bank in the Western District of Washington in connection with the flip of 2399 140th Way Southeast, Bellevue, Washington to straw buyer R.M.

　　　b.   On or about January 12, 2007, Defendants caused Pierce Commercial Bank to wire $511,635.54, via Banner Bank, to Higa Escrow Service's account with Banner Bank in the Western District of Washington in connection with the flip of 20218 170th Avenue Northeast, Woodinville, Washington, to straw buyer S.S.

　　　c.   On or about January 8, 2007, Defendants caused Lehman Investments Inc., in New York, New York, to make two wire transfers, one in the amount of $197,841.78 and one in the amount of $653,430.10 to Higa Escrow Service's account at Banner Bank in the Western District of Washington, in connection with the flip of 10536 Northeast 24th Street, Bellevue, Washington, to straw buyer C.L.

　　　All in violation of Title 18, United States Code, Sections 1349 and 2.

## COUNTS TWO THROUGH FOUR
### (Wire Fraud)

19. The preceding paragraphs are incorporated by reference as if set forth fully herein. Each of the Counts alleged herein was committed during and in furtherance of the conspiracy charged in Count One.

INDICTMENT - 5
(U.S. v. Ashmore, et al.)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

20. Beginning on a date uncertain, but within the last five years, and continuing through on or about January 12, 2008, within the Western District of Washington and elsewhere, MARK ASHMORE, HIEP NGUYEN, LUKE REIMER, and CHRISTOPHER DICUGNO, (collectively, "Defendants"), together with others known and unknown, devised and executed a scheme and artifice to defraud for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations and promises ("the scheme and artifice to defraud"), knowing full well that the pretenses, representations and promises were false.

**A.  Essence of The Scheme and Artifice to Defraud.**

21. The essence of the scheme and artifice to defraud was for Defendants to unlawfully enrich themselves and others by obtaining mortgage loans under false pretenses. Defendants would recruit or cause others to recruit "straw buyers" to purchase residential real property for an inflated price (hereafter, a "flip"). Defendants would then cause the straw buyer to apply for loans to finance the inflated purchase price, using materially false information to obtain the loans. The fraudulently obtained loan would then be used to pay the original seller, with the excess amounts going to Defendants and other conspirators.

**B.  The Scheme and Artifice to Defraud.**

22. It was part of the scheme and artifice to defraud that Defendants and others would identify residential real property for sale (hereafter, collectively referred to as the "subject properties").

23. **Acquisition of Subject Properties.** It was further part of the scheme and artifice to defraud that some of the Defendants, including but not limited to MARK ASHMORE and LUKE REIMER, would acquire the subject properties, either in their own name or in the name of a company they owned and controlled, or through the use of straw buyers, at or close to the original list price. Representative examples include, but are not limited to the following:

INDICTMENT - 6
(U.S. v. Ashmore, et al.)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

a.   <u>2399 140th Way Southeast, Bellevue, Washington</u>: On or about May 6, 2005, MARK ASHMORE and others known and unknown caused straw buyer C.V. to acquire the property at 2399 140th Way Southeast, Bellevue, Washington, for $655,000. The property is subsequently resold to LUKE REIMER for $830,000.

b.   <u>20218 170th Avenue Northeast, Woodinville, Washington</u>: On or about December 14, 2005, MARK ASHMORE and others known and unknown caused straw buyer T.D. to acquire the property at 20218 170th Avenue Northeast, Woodinville, Washington, for $543,000.

c.   <u>10536 Northeast 24th Street, Bellevue, Washington</u>: On or about November 21, 2005, HIEP NGUYEN and MARK ASHMORE and others known and unknown caused straw buyer T.D. to acquire the property at 10536 Northeast 24th Street, Bellevue, Washington, for $720,000.

24.   **Recruitment of Straw Buyers**. It was further part of the scheme and artifice to defraud that MARK ASHMORE, HIEP NGUYEN, LUKE REIMER and others known and unknown would recruit and pay individuals to pose as buyers (hereafter, "straw buyers") for the subject properties. In return for their fee, the straw buyers would allow their identities and credit information to be used in mortgage loan applications submitted to financial institutions and mortgage lenders representing the straw buyer as the true buyer of the selected properties and the individual responsible for the loan. However, the straw buyers at no time believed themselves to be the true owners of the properties, and instead understood that the properties would be controlled by other members of the conspiracy, and that all mortgage payments were to be made by other members of the conspiracy. The conspirators recruited more than fifteen individuals to act as straw buyers, including but not limited to C.V., N.M., R.M., L.A., S.S., J.D., T.D., and C.L. Some of these individuals acted as straw buyers for more than one subject property.

25.   **Flip of Subject Properties to Straw Buyers**: It was further part of the scheme and artifice to defraud that the subject properties would then be sold, or "flipped"

INDICTMENT - 7
(U.S. v. Ashmore, et al.)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

to the straw buyer for a higher price. Representative examples include, but are not limited to, the following:

  a. <u>2399 140th Way Southeast, Bellevue, Washington</u>: On or about April 12, 2007, REIMER entered into a Real Estate Purchase and Sale Agreement (hereinafter, "RESPA") to sell the property at 2399 140th Way Southeast, Bellevue, Washington to R.M. for $1,112,000.

  b. <u>20218 170th Avenue Northeast, Woodinville, Washington</u>: On or about January 10, 2007, ASHMORE caused T.D. to enter into a REPSA to sell the property at 20218 170th Avenue Northeast, Woodinville, Washington to straw buyer S.S. for $650,000.

  c. <u>10536 Northeast 24th Street, Bellevue, Washington</u>: On or about January 8, 2007, ASHMORE cause T.D. to enter into a REPSA to sell the property at 10536 Northeast 24th Street, Bellevue, Washington, to C.L. for $850,000.

  26. **Fraudulent Loan Application.** It was further part of the scheme and artifice to defraud that the Defendants, including but not limited to MARK ASHMORE, LUKE REIMER, and CHRIS DICUGNO, would prepare and/or cause to be prepared on behalf of the straw buyers materially false and fraudulent mortgage loan applications, including (among other things), falsely inflated income levels; false employment information; false employment verifications; false availability of funds to close and/or false verification of funds on deposit. Said misrepresentations were typically contained on a "Uniform Residential Loan Application," also known as a Fannie Mae Form 1003. Defendants acted with the intent to defraud the respective mortgage companies to whom the loan applications were sent, knowing that the lenders would rely on the misrepresentations. Representative examples include, but are not limited to, the following:

  a. <u>2399 140th Way Southeast, Bellevue, Washington</u>: On or about April 23, 2007, MARK ASHMORE and others caused R.M. to falsely claim on a loan application provided to Pierce Commercial Bank, to purchase 2399 140th Way Southeast,

INDICTMENT - 8
(*U.S. v. Ashmore, et al.*)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Bellevue, Washington: (1) that she was employed with Remarkable Properties; (2) that
2  she made $25,000 a month in gross income; (3) that she maintained a bank balance of
3  $112,000; and (4) that the purpose of the loan was to purchase a primary residence.

4      b.    <u>20218 170th Avenue Northeast, Woodinville, Washington</u>: On or
5  about January 11, 2007, MARK ASHMORE, CHRISTOPHER DICUGNO, and others
6  caused S.S. to falsely claim to Pierce Commercial Bank to purchase 20218 170th Avenue
7  Northeast, Woodinville, Washington: (1) that she worked at Equity Solutions Northwest;
8  (2) she made $13,000 a month in gross income; and (3) that the purpose of the loan was
9  to purchase a primary residence.

10      c.    <u>10536 Northeast 24th Street, Bellevue, Washington</u>: On or about
11 January 8, 2007, MARK ASHMORE and HIEP NGUYEN, and others caused C.L. to
12 falsely claim to Lehman Investments Inc., in connection with the purchase of 10536
13 Northeast 24th Street, Bellevue, Washington: (1) that he worked at C-Global, a company
14 owned by HIEP NGUYEN; (2) that he made in excess of $17,000 a month in employment
15 income; (3) that the purpose of the loan was to purchase a primary residence.

16    27.    **Fraudulent Verification of Owner/Occupancy.** It was further part of the
17 scheme and artifice to defraud that, in each case, the false mortgage loan application
18 would also include a separate materially false verification, typically under penalty of
19 perjury, that the purpose of the loan was for the straw buyer to acquire the selected
20 property as a primary residence. The conspirators caused the straw buyer to make this
21 misrepresentation to secure 100% financing of the "flip" transactions (thereby avoiding
22 making a down payment) and to obtain a lower interest rate. Representative examples
23 include, but are not limited to:

24      a.    <u>2399 140th Way Southeast, Bellevue, Washington</u>: On April 20
25 2007, Defendants caused R.M. to sign an "Occupancy and Financial Affidavit" under
26 penalty of perjury falsely certifying that she planned to occupy the residence at 2399
27 140th Way Southeast, Bellevue, Washington, as her primary residence.

28

INDICTMENT - 9
(*U.S. v. Ashmore, et al.*)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

      b.    <u>20218 170th Avenue Northeast, Woodinville, Washington</u>: On or about January 11, 2007, Defendants caused S.S. to sign an "Occupancy Agreement" falsely certifying that she intended to occupy the property at 20218 170th Avenue Northeast, Woodinville, Washington, as her primary residence.

      c.    <u>10536 Northeast 24th Street, Bellevue, Washington</u>. On or about January 8, 2007, Defendants caused C.L. to sign an "Occupancy Affidavit" falsely certifying that he intended to occupy 10536 Northeast 24th Street, Bellevue, Washington, as his principal residence.

28.    It was further part of the scheme and artifice to defraud that Defendants would often make, or cause others to make, the payments on the mortgage loans obtained as part of the conspiracy, in an attempt to maintain the loans until the properties could be sold again, oftentimes in another flip to another straw buyer. However, the conspirators would ultimately fail to make payments on the loans, and some properties would go into foreclosure, causing the financial institutions and mortgage lenders to suffer substantial losses.

29.    The Grand Jury further alleges that the conspiracy affected one or more federally insured financial institutions, as defined in Title 18, United States Code, Section 20, including but not limited to Pierce Commercial Bank.

**C.    Execution of the Scheme and Artifice.**

30.    As to Counts Two through Four, and on each of the dates listed below, within the Western District of Washington, for the purpose of executing and attempting to execute this scheme and artifice to defraud, Defendants did knowingly cause the following mortgage lenders to transmit the total loan funds specified as to each Count in that paragraph, in interstate commerce by means of one or more wires, with the ultimate destination being Higa Escrow Services' trust account at Banner Bank located in the Western District of Washington.

      a.    <u>Count Two</u>: On or about April 23, 2007, MARK ASHMORE, LUKE REIMER, CHRIS DICUGNO, and others caused Pierce Commercial Bank to wire

INDICTMENT - 10
(*U.S. v. Ashmore, et al.*)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  $632,284.50, via Banner Bank, to Higa Escrow Services account with Banner Bank in the
2  Western District of Washington in connection with the flip of 2399 140th Way Southeast,
3  Bellevue, Washington, to straw buyer R.M.
4      b.    <u>Count Three</u>: On or about January 12, 2007, MARK ASHMORE,
5  CHRISTOPHER DICUGNO, and others caused Pierce Commercial Bank to wire
6  $511,635.54, via Banner Bank, to Higa Escrow Service's account with Banner Bank in the
7  Western District of Washington in connection with the flip of 20218 170th Avenue
8  Northeast, Woodinville, Washington, to straw buyer S.S.
9      c.    <u>Count Four</u>:   On or about January 8, 2007, MARK ASHMORE,
10 HIEP NGUYEN, and others caused Lehman Investments Inc., in New York, New York,
11 to make two wire transfers, one in the amount of $197,841.78 and one in the amount of
12 $653,430.10 to Higa Escrow Service's account at Banner Bank in the Western District of
13 //
14 //
15 //

INDICTMENT - 11
(U.S. v. Ashmore, et al.)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Washington, in connection with the flip of 10536 Northeast 24th Street, Bellevue,
2  Washington, to straw buyer C.L.
3      All in violation of Title 18, United States Code, Sections 1343 and 2.

4                                          A TRUE BILL:

5                                          DATED: November 24 2009

6                                          *Signature of Foreperson Redacted*
                                           *Per Policy of Judicial Conference*
7                                          _____
8                                          FOREPERSON

9
10
11 JENNY A. DURKAN
   United States Attorney
12
13
14 LAWRENCE LINCOLN
   Assistant United States Attorney
15
16
17 NICHOLAS W. BROWN
   Assistant United States Attorney
18
19
20
21
22
23
24
25
26
27
28

INDICTMENT - 13
(*U.S. v. Ashmore, et al.*)