The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.   CR09-0402RAJ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| MARK ASHMORE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**A.**     **Introduction**

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Nicholas W. Brown and Aravind Swamination, Assistant United States Attorneys for said District, submits this sentencing memorandum.  Sentencing in this matter is scheduled for April 1, 2011.

On November 24, 2009, the grand jury for the Western District of Washington returned a four-count Indictment against the Defendant, Mark Ashmore, charging him and three others with Conspiracy to Commit Wire fraud in violation of Title 18, U.S.C. Sections 1349 and 1, and three counts of Wire Fraud, in violation of Title 18, U.S.C., Section 1343.

On September 13, 2010, a jury-trial began before your honor.  On September 20,

1  2010, the Defendant was found guilty of each count.

2      Each of the offenses of which the Defendant was convicted carries a maximum

3  penalty of:  imprisonment for up to thirty (30) years;  fine of up to two hundred and fifty

4  thousand dollars ($250,000.00); a period of supervision following release from prison of

5  up to three (3) years; and a one hundred dollar ($100.00) special assessment.  For the

6  reasons set forth below, the government respectfully recommends the Court sentence the

7  Defendant to 96 months in custody, to be followed by three years of supervised release.

8  **B.**      **The Offense Conduct**

9      This Court presided over a week long trial of Mr. Ashmore, during which the

10  conspiracy, and the various roles of the three co-conspirators, were gone into in some

11  depth.  The government presented the testimony of each of the charged co-conspirators,

12  multiple straw buyers involved in the scheme, multiple witnesses from victim lender

13  institutions, and law enforcement officers involved in the investigation.  The government

14  also presented numerous types of documentary evidence, including loan documents and

15  financial records.

16      The scheme was a classic "credit investor" scam that used the personal and

17  financial information of others to fraudulently gain control of various properties.  Mr.

18  Ashmore would identify residential real property for sale.  He would then contact the

19  seller of the subject properties, and would generally offer to purchase the property at well

20  above the asking price.  As part of the proposed sale agreement, the seller of the subject

21  properties would sign an "upgrade agreement," assigning any proceeds over the original

22  asking price to a company owned or controlled by Mr. Ashmore.

23      Mr. Ashmore and his co-conspirators would recruit and pay individuals to pose as

24  buyers ("straw buyers") for the subject properties, often promising to pay them substantial

25  sums of money.  In return for their fee, the straw buyers would allow their identities and

26  credit information to be used in mortgage loan applications.  The applications were

27  submitted to financial institutions and mortgage lenders, and represented the straw buyer

28  as the true buyer of the selected properties, and the individual responsible for the loan.

U.S. SENTENCING MEMO - 2
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   The money obtained via the fraudulent loans was the diverted to Mr. Ashmore and then

2   on to the other conspirators, and some was used to secure residential real property for

3   Defendant's and other members of the conspiracy's use.

4          Beginning sometime in 1999 or 2000, the Defendant, Mark ASHMORE, became

5   involved in real estate investing, buying and selling residential properties in the greater

6   Western Washington area.  From this time until approximately January 2008, the

7   Defendant used several business entities to conduct his fraudulent business, including

8   Equity Solutions Northwest (ESNW), Remarkable Properties LLC, Ashmore Capital

9   Corporation and Quan Holdings.

10         This fraudulent scheme was orchestrated to purchase dozens of residential

11  properties in Washington and Nevada.  A majority of the properties were later "flipped"

12  in subsequent transactions, often leading to falsely inflated property values.  This means

13  that members of the conspiracy would recruit another straw buyer to purchase the same

14  real property, typically at a significantly inflated price over the prior purchase agreement

15  between a member of the conspiracy and the original seller.

16         The conspirators would also often make, or cause others to make, the payments on

17  the mortgage loans obtained as part of the conspiracy, in an attempt to maintain the loans

18  until the properties could be sold again, oftentimes in another flip to a subsequent straw

19  buyer.  However, in the end, the conspirators ultimately failed to make payments on the

20  loans, and the properties generally went into foreclosure or were sold in short sales,

21  causing the financial institutions and mortgage lenders to suffer substantial losses.  The

22  scheme also caused incredible damage to the finances and credit of dozens of individuals

23  recruited to participate in the conspirators' schemes.

24  **C.     Base Offense Level and Loss Amount Calculations**

25         The Presentence Report accurately summarizes the offense conduct in this case

26  and correctly calculates the offense level, criminal history category, and resulting

27  advisory Sentencing Guidelines range.  The Defendant's base offense level is 7, pursuant

28  to U.S.S.G. § 2B1.1.

U.S. SENTENCING MEMO - 3
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

A 20-level upward adjustment based on loss amount also applies, pursuant to U.S.S.G. § 2B1.1(b)(1)(J), as the loss amount is greater than $7,000,000, but less than $20,000,000.

For purposes of the guidelines calculation, the government calculates the total loss associated with the Defendant's fraudulent scheme at over $10 million dollars (approximately $10,193,472.00). To arrive at this figure, a Financial Analyst at the FBI and the case agent, SA Hilary Salee, took the gross loan amounts for the various properties involved in the scheme and examined the recorded documents pertaining to the subsequent sales of these properties. However, the gross amount must be reduced by "the amount the victim has recovered at the time of the sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." Application Note 3(E)(ii). In addition, for the purposes of the Guidelines calculation, the loss amount is the greater of the actual or intended loss, whichever is higher. Application Note 3(C).

**D.**   **Defense Objections to Loss Calculation**

Defense counsel submitted various objections to the government's loss calculations to the U.S. Probation Officer. First, the Defendant argues that the methodology used to calculate the losses is incorrect. Second, the Defendant argues that there is a lack of nexus between the Defendant and some of the various properties and transactions. He further argues that he cannot be held responsible for losses attributable to the scheme as a whole, but in which he had no direct involvement. Lastly, the Defendant argues that the loss amounts must be reduced because of the broader decline in real estate values over the last several years.

**i.**   **The Proper Methodology was used to Calculate Real and Estimated Losses**

The primary objection to the government's methodology made by the Defendant appears to be two-fold; first, that transactions subsequent to the Defendant's personal involvement should not be considered and second, that all losses were affected by the

1   overall decline in the real-estate market and not attributable to the Defendant.  However,

2   both such factors were the "reasonably foreseeable" consequences of the Defendant's

3   offense.  Subsequent sales were not only foreseeable in most circumstances, but often part

4   of the pattern common to the conspiracy.  For example, with respect to the property

5   located on 24th Street in Bellevue, Washington, the Defendant cites the 2003 purchase of

6   the property by the Rule Agency from the prior owner, as an intervening factor that

7   caused a loss not attributable to the Defendant.  However, the Rule Agency was a real

8   estate entity operated by a friend and cohort of the Defendant, Steve Kish.  In fact, as the

9   Court may recall, a number of transactions related to this scheme were completed by the

10  Rule Agency, because the Defendant often referred straw buyers to Mr. Kish when

11  payments were not being paid on the underlying loans.  The Defendant's objection to the

12  losses influenced by the "overall loss in real property value" is discussed below.

13
14      ii.     **The Defendant is Responsible for the Results of all Jointly Undertaken Criminal Activity.**

15          The Defendant also objects to being held responsible for losses attributable to

16  others involved in the conspiracy, on the theory that he was only personally involved in

17  some of the fraudulent loans.  This is plainly incorrect.  Sentencing Guidelines Section

18  1B1.3 provides that conduct relevant to sentencing in cases of "jointly undertaken

19  criminal activity" - such as a criminal plan or scheme, whether or not charged as a

20  conspiracy - includes "all reasonably foreseeable acts and omissions of others in

21  furtherance of the jointly undertaken criminal activity."  While a district court may not

22  automatically hold a defendant responsible for the losses attributable to the entire

23  conspiracy, the defendant is responsible for losses resulting from conduct that is both

24  reasonably foreseeable and within the scope of his agreement. *United States v. Treadwell*,

25  593 F.3d 990, 1002-1003 (9th Cir. 2010).  For example, in *United States v. Partow*, the

26  defendant was convicted of bank and wire fraud arising from his participation in a

27  scheme to fraudulently obtain real property loans.  The defendant argued that the district

28  court should not have considered losses on two properties not included in his counts of

conviction. 283 Fed. Appx. 476 (9th Cir. 2008). The court rejected his argument and affirmed the district court's calculation because the record reflected that those properties were within the scheme in question. *Id.* at 478.  The same general principles apply to restitution.  *United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999) (affirming an order of restitution of $574,700 for a fraud scheme, even though only $60,411 were "directly attributable" to the acts for which the jury found defendant guilty).

The Defense specifically objects to the inclusion of loss figures relating to four properties in Pahrump, Nevada.  However, these properties were clearly part of the same scheme.  Each of the properties involve fraudulent loan documents, completed in exactly the same manner as the other transactions that were part of the conspiracy.  Each of the properties involve the use of straw buyers, including two purchases by Luke Abernathy and his wife.  As the Court may recall, Mr. Abernathy  testified at trial about being introduced to the scheme by co-defendant Luke Reimer and discussing the real estate investment plan with the Defendant.  Mr. Abernathy testified specifically that it appeared that the Defendant was in charge of the real estate operation.  The other two properties in Nevada involved straw buyers recruited by Mr. Reimer, who also testified at trial about recruiting his family members to participate in the scheme.  These transactions were clearly reasonably foreseeable by the Defendant, even if he was not specifically involved.

### iii.    The Decline in the Larger Real Estate Market is Irrelevant.

The Defendant repeatedly objects to the loss calculations of the government for failing to account for the "overall loss in real property value" in the larger market. However, loss calculations for sentencing purposes should not be reduced for this reason. A number of courts in the Ninth and other circuits have refused to do so.  *See, e.g., United States v. Davoudi*, 172 F.3d 1130, 1135 (9th Cir. 1999) (noting that because collateral property is valued at time of sentencing, even if "the bank suffers losses after the offense is discovered because of a falling market or even through its own improvident management, those consequential losses can be attributed to the defendant's conduct for

1    purposes of Guidelines sentencing"); *United States v. O'Neill* 190 Fed. Appx. 577, 579

2    (9th Cir. 2006) (*citing United States v. Sarno*, 73 F.3d 1470, 1500-01 (9th Cir. 1995))

3    (finding that the "government's actual loss calculation was reasonable even though it

4    included the effects of an unexpected market downturn");  *see also United States v Goss*,

5    549 F.3d 1013, 1019 (5th Cir. 2008) (finding that loss calculation should be based on fair

6    market value of collateral at the time of the initial sentencing, market fluctuations

7    notwithstanding).  Moreover, your honor addressed the same question more recently in

8    *U.S. v. Anderson, et. al*, CR08-212RAJ.  In *Anderson*, defense counsel raised the same

9    objection and the Court determined that an overall decline in the market should not be

10   factored in the loss calculations.

11        The rationale the court outlines in *United States v. Mallory* may explain why courts

12   have refused to account for even unforeseeable shifts in market conditions. 2010 U.S.

13   Dist. LEXIS 62904 (E.D. Va. June 23, 2010).  The court explains how the application

14   notes require that the Sentencing Guidelines only require that actual loss, which in a

15   mortgage fraud case is the entire unpaid value of the loan principal be "reasonably

16   foreseeable." *Id.*  "Credits Against Loss," however, are a distinct step in the loss

17   calculation in the Application Notes, which do not require that the value of the collateral

18   be reasonably foreseeable. *Id.*  Thus, the court rejected defendant's argument that he could

19   not have foreseen that defrauded banks would recover so little from foreclosure sales,

20   because "loss may be reduced only by the amount actually recovered or by the amount

21   that is recoverable at the time of sentencing, whether or not the defendant had any idea

22   what the collateral's value would be by that time." *Id.*

23        But even if the value of collateral must be foreseeable, some courts have found

24   that the crash in the housing market was a foreseeable consequence of defendant's

25   fraudulent schemes. *See United States v. Parish*, 565 F.3d 528, 535 (8th Cir. Minn. 2009)

26   (rejecting argument that loss would not have been as high if not for downturn in economy

27   in general and housing market in particular, finding that defendants "reasonably could

28   foresee" the impact of their mortgage fraud scheme on local housing prices); *Mallory*,

U.S. SENTENCING MEMO - 7
(U.S. v. Ashmore, et. al, CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    2010 U.S. Dist. LEXIS 62904 (noting that the "deterioration in the housing market was in

2    no small part due to mortgage fraud schemes such as that perpetrated by defendant and

3    his coconspirators").

4         Nor should falling real estate prices result in a reduction in the loss calculation for

5    the purposes of restitution.  Credit for returned collateral in the restitution context is

6    generally valued at the time of foreclosure, and courts have rejected arguments that the

7    collateral should be valued at an earlier date. *See, e.g., United States v. Gossi*, 608 F.3d

8    574 (9th Cir. 2010). Unlike in the sentencing, moreover, losses need not be reasonably

9    foreseeable, as restitution "seeks to compensate the victim for all the direct and proximate

10   losses resulting form the defendant's conduct." *Gossi,* 608 F.3d 574 (rejecting defendant's

11   argument that losses must be foreseeable).  And outside forces affecting the value of loss

12   do not constitute an "intervening cause" if the defendant's conduct caused the loss itself.

13   *United States v. Gordon*, 393 F.3d 1044, 1055 (9th Cir. 2004).  In *Gordon*, for example,

14   the defendant alleged that the stock he embezzled was fraudulently inflated because of the

15   actions of a third party, making the loss calculation for his restitution order higher than

16   the loss amount for which he was responsible. *Id.* at 1055.  The court rejected the

17   argument that the alleged fraudulent stock inflation was an "intervening cause" because

18   "it did not 'cause' the loss to [the victim], but merely adversely affected the value of the

19   property that Gordon embezzled." *Id.*

20   **E.    Total Offense Level and Advisory Guidelines Range**

21        The U.S. Probation Office correctly calculates the base offense level for the

22   Defendant's offenses at level seven (7), pursuant to USSG 2B1.1(a)(1).  The Probation

23   Office also correctly adds an upward adjustment of twenty (20) levels for the total loss

24   amount, pursuant to USSG § 2B1.1(b)(K), for a loss amount more than $7,000,000, but

25   less than $20,000,000.  Next, the presentence report correctly accounts for an upward

26   adjustment for the number of victims of this offense.  While only three specific victim

27   lenders were presented at trial, the government has identified well over ten victims of the

28   conspiracy, which does not include the numerous individuals who were victimized by the

U.S. SENTENCING MEMO - 8
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Defendant's conduct in this case.  A two-level increase is therefore appropriate pursuant

2  to USSG § 2B1.1(b)(2)(A).

3       The Defendant is also properly identified as the leader and organizer of the

4  offense.  The evidence presented at trial clearly established that the Defendant was the

5  driving force behind this conspiracy.  He recruited others to join in his scheme, including

6  co-defendants Luke Reimer and Hiep Ngyuen, and was far more involved in the

7  execution of the offense than his co-defendants.  The Defendant was further responsible

8  for recruiting multiple straw buyers, including two who testified at trial, Robin Myers and

9  Nino Mallamo, as he repeatedly sold blatantly false dreams of quick and easy profits to

10 dozens and dozens of people.  Countless individuals have had their financial lives

11 destroyed by the Defendant and it is clear that the scheme was organized and executed

12 primarily by the Defendant.  The Defendant was also the founder of ESNW, the primary

13 vehicle used to execute the scheme, and profited substantially from its success.  A two-

14 point role enhancement pursuant to USSG § 3B1.3(c) is therefore appropriate.

15      The Total Offense Level is therefore a level 31.  To date the Defendant has never

16 accepted responsibility for his offenses and no reduction for acceptance is appropriate.

17 The government agrees with the presentence report that the defendant has no prior

18 criminal history and is therefore in a criminal history category of I.  The corresponding

19 guideline range is 108-135 months.

20 **F.    Restitution**

21      Pursuant to 18 U.S.C. 3663A and 3664(f)(1)(A), the Court must order that the

22 Defendant pay full restitution to the victims of his offenses.  The government calculates

23 the total restitution owed by the Defendant to be $1,545,930.00.  The government's

24 position on restitution in this matter is more thoroughly addressed in Docket No. 125.

25 **G.    Recommendation and Justification**.

26      The government respectfully recommends a custodial sentence of 96 months, to be

27 followed by five years of supervised release.

28

U.S. SENTENCING MEMO - 9
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1      As set forth in the Supreme Court's decision in *United States v. Booker*, 453 U.S.

2   220, 246 (2005), this Court is required to consider the sentencing range calculated under

3   the United States Sentencing Guidelines, together with the other factors set forth in Title

4   18, United States Code, Section 3553(a), including: (1) the nature and circumstances of

5   the offense and the history and characteristics of the defendant; (2) the need for the

6   sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the

7   law, and to provide just punishment for the offense, (b) to afford adequate deterrence to

8   criminal conduct, (c) to protect the public from further crimes of the defendant, and (d) to

9   provide the defendant with educational and vocational training, medical care, or other

10   correctional treatment in the most effective manner; (3) the kinds of sentences available;

11   (4) the kinds of sentences and the sentencing range established for the offense as set forth

12   in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted

13   sentence disparity among defendants involved in similar conduct who have similar

14   records; (7) the need to provide restitution to victims.

15      The government's recommended sentence reflects the leading role the Defendant

16   played in this wide ranging and serious conspiracy, the tremendous financial damages to

17   both financial institutions and private individuals caused by the Defendant's conduct, and

18   his continued failure to take responsibility for committing these crimes.

19      As discussed above, it is clear from the evidence introduced at trial that the

20   Defendant was the primary actor behind this scheme.  He recruited his co-conspirators,

21   multiple straw buyers, and was far more involved than any other participant.  This scheme

22   would not have existed without the Defendant's strong leadership role.  Moreover, the

23   offenses committed by the Defendant were incredibly serious crimes.  The impact of this

24   credit investor scheme on the mortgage lending industry cannot be overstated.  Many of

25   the lenders involved in this particular scheme have gone out of business.  This includes

26   Pierce Commercial Bank in Tacoma, Washington, which was closed by state regulators

27   on November 5, 2010.  There is also untold damage to the multitude of people the

28   Defendant took advantage of curing the course of the scheme.  While some of the people

U.S. SENTENCING MEMO - 10
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   he recruited to participate had some idea of fraudulent nature of the scheme, many were

2   purely duped by the Defendant's savvy recruitment efforts.

3        Lastly, the Defendant has continued to deny responsibility for the crimes he

4   committed.  Despite the overwhelming evidence and the jury's clear verdict, the

5   Defendant has steadfastly maintained his innocence.  His failure to acknowledge

6   wrongdoing is incredibly troubling to the government and further justifies the

7   recommended sentence.  The Defendant clearly needs a sentence that will provide

8   adequate deterrence from criminal conduct, and the public needs to be protected from his

9   scams.

10  **H.    Conclusion**

11       For the reasons set forth above, the government respectfully recommends a

12  sentence of 96 months, to be followed by three years of supervised release.

13

14       DATED this 25th day of March, 2011.

15                                          Respectfully submitted,

16                                          JENNY A. DURKAN
                                            United States Attorney
17
                                            s/ *Nicholas Brown*
18                                          NICHOLAS W. BROWN
                                            ARAVIND SWAMINATHAN
19                                          Assistant United States Attorneys
                                            United States Attorney's Office
20                                          700 Stewart Street, Ste. 5220
                                            Seattle, Washington 98101
21                                          Facsimile: 206-553-0755
                                            Phone: 206-553-1565
22                                          E-mail: nicholas.brown@usdoj.gov

23

24

25

26

27

28

U.S. SENTENCING MEMO - 11
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

## CERTIFICATE OF SERVICE

2         I hereby certify that on March 25, 2011, I electronically filed the foregoing with

3    the Clerk of Court using the CM/ECF system which will send notification of such filing

4    to the attorney of record for the defendant.

5

6                                        s/ *Andrew Fuller*
                                         Andrew Fuller
7                                        Legal Assistant
                                         United States Attorney's Office
8                                        700 Stewart Street, Suite 5220
                                         Seattle, Washington 98101-1271
9                                        Phone: (206) 553-5127
                                         FAX:   (206) 553-0755
10                                       E-mail: andrew.fuller@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. SENTENCING MEMO - 12
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970